352 P.2d 235

Mike KOSERIS and Sophia Koseris, husband and wife, Plaintiffs-Respondents,

v.

J. R. SIMPLOT COMPANY, an Idaho Corporation, and J. R. Simplot, Defendants-Appellants (two cases).

Nos. 8809–8810.

Supreme Court of Idaho.

May 19, 1960.

264

O. R. Baum, Ben Peterson, Ruby Y. Brown, Merrill K. Gee, Gee & Hargraves, Pocatello, for appellants.

Gus Carr Anderson, Pocatello, for respondents.

SMITH, Justice.

Respondents instituted this action seeking monetary damages against appellants, hereinafter called Simplot Company, allegedly caused by the operation of a chemical fertilizer plant, and for injunctive relief. After commencement of the trial, respondents waived all claims for damages, which left for decision only the question of injunctive relief.

Respondents, continuously from the year 1941, to the time of the trial (during November, 1957), were the owners of a two-

acre tract situate some six to seven miles westerly from Pocatello, in Power County, on the north side of U. S. Highway No. 30 which extends in an easterly-westerly direction, and the owners of a cinder block building situate thereon, in size 65 feet by 85 feet, originally constructed for night club purposes.

Simplot Company, continuously from the year 1943, to the time of trial, owned a 135-acre tract in the near vicinity of appellants' property, in and upon which, during December 1944, it constructed an industrial fertilizer plant for the purpose of manufacturing and converting phosphate ores into chemical fertilizer. This plant is situate some 300 to 400 yards westerly from respondents' building, on the south side of U. S. Highway No. 30, and also on the south side of the Union Pacific railroad which parallels the highway along its south boundary.

Appellant in the manufacture of a chemical fertilizer grinds and processes a phosphate ore, mixing chemicals therewith.

During the year 1949–1950 appellant enlarged and expanded the fertilizer plant and increased production of its output of chemical fertilizer. The processes, by which the fertilizer is manufactured and produced, result in the emission from the plant and entering into the air of a quantity of finely powdered dust and smoke having an offensive odor, which at times, ac-

cording to the direction of air currents, is carried across the railroad tracks and U. S. Highway No. 30 over and onto the premises of respondents.

Respondents' building has not been operated as a night club or other business since some time during the year 1951; during that year the club was "padlocked" by the sheriff of Power County in an abatement proceeding against the place. The injunctive order was not released until August 2, 1957. Since some time during 1951 to the time of trial the building has been vacant, except for storage of small items

Simplot Company for some time has been improving the operation of its plant, and improving the control of the dust and fumes therefrom, and has expended large sums in such improvements. The trial court found that the company has reduced the emission of dust and fumes, and that its products have been greatly changed and improved.

The trial court, sitting without a jury, at the conclusion of the testimony, issued an order enjoining appellant from putting dust, smoke or obnoxious odors upon or across respondents' property; and providing that if appellant's plant cannot be operated without causing dust, smoke and obnoxious odors to be placed upon respondents' land, then appellant must cease its operations and be enjoined from so operating.

Appellants assign error of the trial court in entering judgment granting to respondents the injunctive relief. Simplot Company contends that injunctive relief is not the proper remedy, urging that respondents' entitlement to relief, if any they had, rested in damages, under the comparative injury doctrine

Simplot Company, in support of its contention that the granting of injunctive relief is improper, offered evidence relating to the social and economic value of its fertilizer manufacturing plant, in effect contending that such evidence should have been weighed against that relating to respondents' operations, in determining whether injunctive relief is the appropriate remedy, if a nuisance be found to exist. The trial court excluded such evidence, whereupon the company made its offers of proof substantially as follows:

That in the operation of its fertilizer plant it carries on a leading industry in southeastern Idaho, with a capital investment of approximately $5,500,000; that its investment in inventory at the fertilizer plant in Power County as of November 1, 1957, was $1,627,207; that as of the same date its investment at the Gay Mine, where it obtains its phosphate ores, in Bingham County, was approximately $145,500, and its investment in land, buildings and ma-

chinery at the Gay Mine exceeded $1,-644,000; that payments to local businesses amounted to $1,030,000; that its other purchases and sales exceeded $8,-500,000; that for the year 1956 it paid over $130,000 in taxes; that nearly 1,000 employees and their dependents rely for their livelihood upon the operations of the Simplot plant, and that it has an annual payroll of more than $1,242,000.

That it had spent $223,688.00 for a fume and dust control system which constituted only a part of the total moneys expended in its attempts to control dust and fumes; that only 0.1% of any dust which is emitted from its plant due to its operations is discharged from its stacks.

█ The record amply indicates that the Simplot Company's operation, involved in this proceeding, constitutes a lawful business, which in nowise can be regarded as a nuisance per se. Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695; White v. City of Twin Falls, 81 Idaho 176, 338 P.2d 778; that if it is a nuisance, it is per accidens, McNichols v. J. R. Simplot Co., 74 Idaho 321, 262 P.2d 1012.

█ Equity will not entertain jurisdiction where there is an adequate remedy at law. Presley v. Dean, 10 Idaho 375, 79 P. 71; School District No. 25 v. Rice, 11 Idaho 99, 81 P. 155; Garrett Transfer & Storage Co. v. Pfost, 54 Idaho 576, 33 P.2d 743. In Roy v. Chevrolet Motor Car Co., 262 Mich. 663, 247 N.W. 774, 776, the Supreme Court of Michigan, quoting from Fox v. Holcomb, 32 Mich. 494, said:

"Avoiding multiplicity of suits is not a conclusive reason for intervention of equity. In the instant case literal application may well be made of the following statement by Chief Justice Graves in Fox v. Holcomb, 32 Mich. 494: 'So far as we can judge from the record, a mode of redress so radical would operate against the interests of all parties and eventuate not only in great public inconvenience, but with a pecuniary severity upon the interests of the defendants entirely disproportionate to the nature and extent of the grievance of complainant Fox. Strict legal right, in contradistinction to what is equitable, is not a necessary criterion of equitable redress. A court of equity always endeavors to shape its administration of relief in such way as to avoid oppression or the entailment of consequences of unnecessary rigor.'"

City of Harrisonville, Mo. v. W. S. Dickey Clay Mfg. Co., 289 U.S. 334, 53 S.Ct. 602, 77 L.Ed. 1208; King v. Columbian Carbon Company, 5 Cir., 152 F.2d 636; Johnson v. Independent School Dist. No. 1, 239 Mo.

App. 749, 199 S.W.2d 421; Gerald Park Improvement Ass'n v. Bini, 138 Conn. 232, 83 A.2d 195, 197; Riter v. Keokuk Electro-Metals Company, 248 Iowa 710, 82 N.W.2d 151.

The comparative benefits and hardships should be weighed in determining whether injunction is the appropriate remedy under the facts and circumstances in a particular case. Hansen v. Independent School District No. 1, 61 Idaho 109, 98 P.2d 959; McCarthy v. Bunker Hill & Sullivan Mining & C. Co., 9 Cir., 164 F. 927; Madison v. Ducktown Sulphur, Copper & Iron Co., 113 Tenn. 331, 83 S.W. 658; Johnson v. Independent School Dist. No. 1, supra; Bartel v. Ridgefield Lumber Co., 131 Wash 183, 229 P. 306, 37 A.L.R. 683; Storey v. Central Hide & Rendering Co., 148 Tex. 509, 226 S.W.2d 615; Restatement of Torts, §§ 941, 942.

In Hatch v. W. S. Hatch Company, 3 Utah 2d 295, 283 P.2d 217, the Supreme Court of Utah, in determining whether an actionable nuisance existed, held that the court must weigh the gravity of harm to the plaintiffs against the utility and reasonableness of defendant's conduct.

In York v. Stallings, Or., 341 P.2d 529, 534, the rule is announced, supported by a wealth of authorities:

"This court heretofore has accepted the balancing doctrine in cases involving the public convenience. In Fraser v. City of Portland, 81 Or. 92, 98, 158 P. 514, 516, 9 A.L.R. 614, this court stated: ' * * * sometimes a court of equity will decline to raise its restraining arm and refuse to issue an injunction * * * even though an admitted legal right has been violated, when it appears that * * * the issuance of an injunction would cause serious public inconvenience or loss without a correspondingly great advantage to the complainant.' "

In McCarthy v. Bunker Hill & Sullivan Mining & C. Co., supra, the plaintiff sought to enjoin the mining company from discharging tailings from its mills into a stream which flowed, in times of overflow, on to farm lands below. After recognizing the comparative injury doctrine, the federal appellate court refused the injunctive relief; particularly since the injunction, if granted, would necessitate the closing of mines and mills employing many men, and in which large sums of capital had been invested, and would practically wipe out of existence important towns, ruin a large number of businesses, and destroy markets for the crops of many farms, and since but a comparatively small amount of damage was done by tailings discharged from the mill into the stream in times of overflow. The Court, then recognized as ap-

plicable the comparative injury doctrine, saying:

> "Nor should an injunction be granted in any case where it will necessarily operate contrary to the real justice of the case. Furthermore, where, as in the present case, it is sought to enjoin a lawful business, the court should give due consideration to the comparative injury which will result from the granting or refusal of the injunction sought." [164 F. 940.]

In Hansen v. Independent School Dist. No. 1, 61 Idaho 109, 98 P.2d 959, this Court, in granting limited injunctive relief, recognized the rule of comparative injury. The case involved the conduct of baseball games at night on a ball field situate in a residential district with attendant bright lights, noisy people, heavy automobile traffic and trespassing of people in and upon plaintiffs' property. The Court recognized that the use of the ball field in such a manner constituted a nuisance per accidens and not per se. The limited injunctive relief granted in nowise interfered with conduct of the ball games on the ball field, but restrained defendant only from shining the bright lights on plaintiffs' premises and causing noise, such as to interfere with plaintiffs' sleep at reasonable hours; and from allowing plaintiffs' premises to be trespassed upon, and from allowing automobile traffic to interfere with plaintiffs' ingress and egress to and from their property.

■ Applying the theory of the Hansen case to the case at bar, any injunctive relief should not prohibit Simplot Company from conducting its lawful business; nor prohibit the emission of dust and fumes beyond the quantity that may be emitted upon reasonable control thereof by installation of up-to-date systems of control; nor beyond what is inherent in the industry when conducted consonant with modern methods. Riter v. Keokuk Electro-Metals Company, 248 Iowa 710, 82 N.W.2d 151; King v. Columbian Carbon Company, 5 Cir., 152 F.2d 636.

While the offers of proof of Simplot Company on the theory of comparative injury were refused by the court, nevertheless those offers were designed and intended to develop the ground work similar in theory as involved in the Hansen case, i. e., that Simplot Company, in the conduct of its fertilizer plant, had been able to control the alleged nuisance per accidens to the maximum efficient extent, consonant with modern methods of control applicable to the particular industry, thereby controlling and limiting the emissions to the minimal amount inherent in such industry.

The historical background for the recognition of the doctrine of comparative injury appears to stem from Madison v. Ducktown Sulphur, Copper & Iron Co., 113 Tenn.

331, 83 S.W. 658, 667, wherein the Supreme Court of Tennessee held:

'The result [of an injunction] would be practically a confiscation of the property of the defendants for the benefit of the complainants—an appropriation without compensation. The defendants cannot reduce their ores in a manner different from that they are now employing, and there is no more remote place to which they can remove. The decree asked for would deprive them of all of their rights. We appreciate the argument based on the fact that the homes of the complainants who live on the small tracts of land referred to are not so comfortable and useful to their owners as they were before they were affected by the smoke complained of, and we are deeply sensible of the truth of the proposition that no man is entitled to any more rights than another on the ground that he has or owns more property than that other. But in a case of conflicting rights, where neither party can enjoy his own without in some measure restricting the liberty of the other in the use of property, the law must make the best arrangement it can between the contending parties, with a view to preserving to each one the largest measure of liberty possible under the circumstances."

While the trial court refused to allow to be introduced in evidence the tendered offers of proof of Simplot Company, nevertheless, the entire record and exhibits introduced in evidence are indicative of the substantial industrial operation which it conducts. We are constrained to hold that the trial court erred in sustaining objections to those offers of proof, since they were relevant as bearing upon the issue whether respondents, in seeking injunctive relief, were pursuing the proper remedy; nevertheless, on the theory of damages which respondents had waived, the ruling was correct.

The judgment is reversed and the cause remanded with instructions to the trial court to reopen the case and to admit in evidence the tendered offers of proof of Simplot Company, as well as other evidence of like nature, should it desire to introduce additional evidence; and to admit any evidence respondents may desire to offer in contravention of any such evidence offered by Simplot Company, and thereupon to make findings of fact and conclusions of law, and to render judgment accordingly.

Costs to appellants.

TAYLOR, C. J., KNUDSON and Mc-FADDEN, JJ., and MARTIN, D. J., concur.

McQUADE, J., not participating.